UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARYANN PRANGE, | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:22-CV-1133 (JCH) |
| v. | : | |
| | : | |
| KASZMER J. ARSZYLA, JR., | : | |
|     Defendant. | : | DECEMBER 11, 2024 |
| | : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. NO. 94)**

**I.     INTRODUCTION**

Plaintiff Maryann Prange ("Ms. Prange") brings claims of elder exploitation, fraudulent nondisclosure, and other Connecticut state law claims against her brother, defendant Kaszmer Arszyla ("Mr. Arszyla"), pursuant to the court's diversity jurisdiction. See Complaint (Doc. No. 18).  Ms. Prange alleges that, while she and Mr. Arszyla were acting as co-agents under a power of attorney for her aunt, he mislead her into signing documents that designated himself a partial beneficiary of an annuity instead of her.

Before the court is the defendant's Motion to Dismiss and Motion for Judgment on the Pleadings pursuant to Rules 12(b)(1) and 12(c).  See Motion to Dismiss for Lack of Jurisdiction ("Def.'s Mot.") (Doc. No. 94); see Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings ("Def.'s Mem.") (Doc. No. 94-1).  Ms. Prange opposes the Motion.  See Memorandum of Law in Opposition to the Defendant's Motion to Dismiss ("Pl.'s Opp.") (Doc. No. 98).  For the following reasons, the Motion is denied.

1

## II.     BACKGROUND AND PROCEDURAL HISTORY

### A.     Factual Background[1]

In October of 2017, Ms. Prange became an agent under a springing durable power of attorney for her aunt, H. Monica Carroll ("Ms. Carroll"), after Ms. Carroll became incapacitated. See Complaint, Count One, at ¶ 5. In February of 2019, Ms. Prange, who is herself an elderly person, sought to have her brother, Mr. Arszyla, appointed as a co-agent under Ms. Carroll's springing durable power of attorney. See id. at ¶ 6. Ms. Prange did so with the agreement that Mr. Arszyla would take care of all financial matters for Ms. Carroll. See id. Ms. Carroll's power of attorney stated that if, at any time co-agents are acting, acts of co-agents require approval and signature from both agents acting jointly. See id. at ¶ 6.

Prior to June of 2020, Ms. Carroll owned a variable annuity contract with Jackson National Life Insurance Company ("Jackson Annuity"). See id. at ¶ 9. Ms. Prange was a 50 percent beneficiary of the Jackson Annuity; the other 50 percent beneficiary was her sister, Joan Lavorgna ("Ms. Lavorgna"). See id. at ¶¶ 13-14.

In June of 2020, Mr. Arszyla told Ms. Prange that the Jackson Annuity would terminate in August of 2020, and that the money would be lost if it was not transferred to

---

[1] The court draws facts for this section from the allegations in Ms. Prange's Complaint. See Complaint (Doc. No. 18).

The court notes that in deciding a Rule 12(b)(1) motion, the court "may refer to evidence outside the pleadings." See Harty v. W. Point Realty, Inc., 28 F.4th 435, 441 (2d Cir. 2022). However, "it is not invariably required to consider such evidence," and the court is obligated to do so only when "jurisdictional facts are placed in dispute." Id. In his Motion, Mr. Arszyla has not introduced any evidence extrinsic to the Complaint, and has based his challenge to subject-matter jurisdiction solely on the face of the pleadings. See Lugo v. City of Troy, New York, 114 F.4th 80, 87 (2d Cir. 2024) (explaining that "a Rule 12(b)(1) motion may be either facial or fact-based."). Because his 12(b)(1) motion is directed at the face of the pleadings, the court will draw facts from the well-pleaded allegations in the Complaint.

This court views this as appropriate further because Mr. Arszyla also moves pursuant to rule 12(c), and "the standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim", see Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 301 (2d Cir. 2021).

a new annuity. See id. at ¶ 15. On June 2, 2020, Mr. Arszyla sent Ms. Prange an email with eight pages of an application for an exchange of the Jackson Annuity to an annuity with Jefferson National Life Insurance Company ("Jefferson Annuity"). See id. at ¶ 16. In the email, Mr. Arszyla told Ms. Prange to print the forms, sign them, scan them, and return them to Mr. Arszyla. See id. at ¶ 17. Ms. Prange then signed the eight pages of the application and returned them to Mr. Arszyla. See id. at ¶ 18.

However, those eight pages were not the full application that Mr. Arszyla prepared and later submitted. See id. at ¶ 19. Ms. Prange alleges that Mr. Arszyla submitted a 13-page application for the Jefferson Annuity, which application included a page that designated himself as a 40 percent beneficiary, and Ms. Lavorgna as a 60 percent beneficiary. Ms. Prange did not know about this redesignation, and she would not have approved it had she known. See id. at ¶¶ 22-24.

In December of 2022, Ms. Carroll passed away. See id. at ¶ 25. At the time, the value of the Jefferson Annuity was $363,058.54. See id. at ¶ 26. Ms. Prange learned that she was not a beneficiary of the annuity when Mr. Arszyla told her in January of 2021. See id. at ¶ 29.

B.     Procedural Background

On July 27, 2022, Ms. Prange filed a complaint in Connecticut state court. See Notice of Removal at 13 (Doc. No. 1). In conjunction with her Complaint, Ms. Prange filed an Application for a Prejudgment Remedy ("PJR") that sought an attachment "to secure the sum of $544,587.81". See Notice of Removal at 8 (Doc. No. 1).

Claiming diversity jurisdiction, Mr. Arszyla removed the case to this court on September 7, 2022. Id. at 1. Ms. Prange refiled her Complaint, see Complaint, (Doc.

No. 18), as well as an affidavit in support of a Motion for Prejudgment Remedy, see Affidavit of Maryann Prange (Doc. No. 19).

In her Complaint, Ms. Prange brings the following claims: (1) elder exploitation in violation of Connecticut General Statutes ("C.G.S.") § 17b-462; (2) fraudulent non-disclosure; (3) constructive fraud; (4) unjust enrichment; (5) conversion; (6) civil theft in violation of C.G.S. § 52-564; and (7) negligent infliction of emotional distress. See generally Complaint. Although listed as a separate count (8), she seeks a remedy of constructive trust over Arszyla's portion of the Jefferson Annuity. See id., Count Eight.

On January 5, 2023, following a two-day evidentiary hearing, the court granted Ms. Prange's Application for a Prejudgment Remedy and granted her an attachment to Mr. Arszyla's property in the amount of $221,529.27. See Ruling (Doc. No. 59). That figure encompassed Ms. Prange's claimed actual damages, plus reasonable interest and the cost of two years of litigation. See id. at 21. On July 2023, the court later granted an additional attachment of $337,467.13 to account for attorneys fees and possible punitive damages. See Ruling (Doc. No. 86).

On March 1, 2024, Mr. Arszyla filed the instant Motion. See Mot. to Dismiss. Ms. Prange opposes the Motion. See Pl.'s Opp. Mr. Arszyla did not file a reply.

### III. LEGAL STANDARD

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for "lack of subject matter jurisdiction". Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016). When, as here,[2] "the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . the task of the district court is to determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." Id. (internal citations and quotations omitted). When "standing is challenged on the basis of the pleadings," the court "accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." United States v. Vazquez, 145 F.3d 74, 81 (2d Cir. 1998) (quoting Warth v. Seldin, 422 U.S. 490, 501 (1975)).

Under Rule 12(c), a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 301 (2d Cir. 2021). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor. See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).

---

[2] The court considers the present Motion to be a "facial" 12(b)(1) motion. See n. 1, supra.

5

**IV.    DISCUSSION**

    A.    <u>Standing</u>

Mr. Arszyla argues that the court lacks subject matter jurisdiction because Ms. Prange does not have standing to sue. <u>See</u> Def.'s Mem. at 4-5. Mr. Arszyla's argument focuses principally on Ms. Prange's role as a coagent under the power of attorney. Mr. Arszyla argues that, because Ms. Prange signed the annuity application "in a representative capacity" and not "in a personal/individual capacity", she now lacks standing to sue in her individual capacity. <u>See</u> <u>id.</u> For the reasons discussed below, the court disagrees.

To establish Article III standing, Ms. Prange must plausibly allege that "[she] (1) 'suffered an injury in fact,' (2) that the injury 'is fairly traceable' to the defendant's challenged conduct, and (3) that the injury 'is likely to be redressed by a favorable judicial decision.'" <u>Soule v. Connecticut Ass'n of Sch., Inc.</u>, 90 F.4th 34, 45 (2d Cir. 2023) (quoting <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 338 (2016)). To constitute an "injury in fact", a harm must be "concrete, particularized, and actual or imminent". <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 423 (2021). In the court's view, Ms. Prange has plausibly alleged facts satisfying each of these requirements. Ms. Prange suffered an "injury in fact" that was "concrete and particularized" in the amount of 50 percent of the value of the Jefferson Annuity upon Ms. Carroll's passing. <u>TransUnion</u>, 594 U.S. at 423. That alleged injury is fairly traceable to the actions of Mr. Arszyla, who allegedly induced her to sign the annuity application without disclosing the beneficiary change. Finally, the injury is redressable in the form of money damages.

For similar reasons, Ms. Prange has standing under Connecticut Law. <u>See</u> <u>Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.</u>, 418 F.3d 168, 173 (2d

6

Cir. 2005) ("[w]here, as here, jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action").  To have standing under Connecticut law, a plaintiff must have "some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy."  Emerick v. Town of Glastonbury, 145 Conn. App. 122, 127 (2013).  A plaintiff must also show either of the two types of "aggrievement" as follows:

> There are two general types of aggrievement, namely, classical and statutory; either type will establish standing, and each has its own unique features. . . .Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share.... Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest." (Internal quotation marks omitted.)

Citibank, N.A. v. Lindland, 310 Conn. 147, 162 (2013).  In the court's view, Ms. Prange has alleged facts that show her interest in the controversy is "specific and personal", and that her interest was "specifically and injuriously affected".  Citibank, 310 Conn. at 162.  Therefore, Ms. Prange satisfies the threshold requirements of standing under both Article III and Connecticut state law.

Mr. Arszyla appears to make three arguments to dispute Ms. Prange's standing.  First, he argues that, because the annuity had not vested at the time Ms. Prange was a beneficiary, her property interest in the annuity was limited to a "mere expectancy" of a possible inheritance, and is therefore not a sufficient property interest to serve as the basis for standing.  See e.g. Def.'s Mem. at 10-11.  Second, he argues that, because Ms. Prange signed the annuity application "in a representative capacity" and not "in a

7

personal/individual capacity", she now lacks standing to sue in her individual capacity. See id. at 4-5.  Finally, Mr. Arszyla argues that any asserted claims belong only to Ms. Carroll and her estate, not to Ms. Prange.  See id. at 7-8.  For reasons discussed below, the court is not persuaded.

First, Mr. Arszyla argues that Ms. Prange lacks standing because the annuity had not yet vested, so her inheritance was a "mere expectancy".  See, e.g. Def.'s Mem. at 10-11.  As Ms. Prange points out in her opposition, this argument appears to the court to be based on a misstatement of Connecticut law.  Connecticut courts have long held that a beneficiary's interest in an unvested annuity is "more than a mere expectancy." See Allen v. Home Nat. Bank, 120 Conn. 306 (1935) (holding that "the beneficiary's interest is regarded, in this state and quite generally, as more than a mere expectancy. . . . So long as the power of defeasance is not exercised, [beneficiaries] stand in the position of one having a title which the law will recognize, and for the protection of which they are entitled to the usual legal and equitable remedies.").  The Second Circuit has also held that "a person's interest as a named beneficiary or potential heir is a property interest that is protected by the tort law of Connecticut."  Devlin v. United States, 352 F.3d 525, 542 (2d Cir. 2003) (Calabresi, J.).

Finally, the court notes that many Superior courts[3] in Connecticut have also recognized as a cause of action "tortious interference with the right of inheritance".  See Solon v. Slater, 345 Conn. 794, 820 (2023), quoting Wild v. Cocivera, No. HHDCV146050575S, 2016 WL 3912348, at *5 (Conn. Super. Ct. June 16, 2016) ("although 'a minority of judges of the Superior Court has declined to recognize such a

---

[3] As the Connecticut Supreme Court notes in Solon v. Slater, 345 Conn. 794, 820 (2023), no appellate court in Connecticut has taken a position on whether this cause of action exists under Connecticut law, and the court does not express an opinion here.

cause of action,' most Superior Court judges have 'recognized the viability of this cause of action . . . ") Ms. Prange does not bring claims under this cause of action, and this court takes no position on whether such a cause of action would lie here. However, the repeated recognition of "tortious interference with the right of inheritance" by Superior Courts in Connecticut suggests to this court that, under Connecticut law, a plaintiff has a sufficient property interest in a reasonably expected inheritance that the deprivation of such an inheritance can establish an injury in fact. Accordingly, the court concludes that Ms. Prange's interest in the annuity is "more than a mere expectancy" and is sufficient to establish her standing.

Mr. Arszyla's second argument is that, because Ms. Prange signed the annuity application "in a representative capacity", she now lacks standing to sue in her "individual capacity". See Def.'s Mem. at 4-5. Mr. Arszyla goes so far as to claim that Ms. Prange in her capacity as coagent must be treated as a wholly separate person from Ms. Prange in her individual capacity. See id. at 5. In support of this argument, Mr. Arszyla quotes Getachew v. L&S Invs., LLC, No. FSTCV206052318S, 2022 WL 1059910, at *3 (Conn. Super. Ct. Feb. 22, 2022), to say that "Connecticut courts recognize that there is a distinction between an individual in a personal/individual capacity and the same individual in a representative capacity, such as executor or trustee". Def.'s Mem. at 5. Mr. Arszyla is correct that Connecticut courts have distinguished between personal and representative capacities, but the cases that he cites are about the representative capacities of trustees, not agents acting under a power of attorney. See Getachew, 2022 WL 1059910, at *3; see also Joseph v. Donovan, 116 Conn. 160, 164 (Conn. 1933) (in a suit brought against a person in their

9

individual capacity, a judgment cannot be rendered against them as a trustee). The court therefore views these cases as distinguishable.

When a trustee is a party to a case, courts distinguish between the trustee's individual and trustee capacities because, in their capacity as trustees, trustees can sue or be sued on behalf of the trust. "Traditional common law trusts . . . cannot sue or be sued in their own right. . . ." United States v. Fridman, 974 F.3d 163, 181 (2d Cir. 2020) (internal citations and quotations omitted) (New York Law). As a result, "the trustee is a proper person to sue or be sued on behalf of a trust." Day v. Seblatnigg, 186 Conn. App. 482, 499 (2018), aff'd, 341 Conn. 815 (2022). In their representative capacity as trustee, "a trustee has standing to maintain an action asserting the trust's interests". Naier v. Beckenstein, 131 Conn. App. 638, 647 (2011). In the law of trusts, therefore, courts readily distinguish between whether a trustee is sued in their individual capacity, their representative capacity, or both.

However, "[a] trustee is not an agent." Heise v. Rosow, 62 Conn. App. 275, 282 (2001), quoting Taylor v. Mayo, 110 U.S. 330, 334 (1884). "Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control. . . ." Restatement (Third) Of Agency § 1.01 (2006). Under the common law of Connecticut, a power of attorney creates a "formal contract of agency" between the grantor and the attorney-in-fact, or agent. Long v. Schull, 184 Conn. 252, 256 (1981).

In the common law of agency, the court is aware of no rule that a plaintiff's dealings in their capacity as agent cannot serve as the basis for individual capacity

10

claims. Nor does Mr. Arszyla cite any. The law of agency is clear that an agent as defendant can be individually liable in tort even for actions taken on behalf of the principal. See Restatement (Third) Of Agency § 7.01 (2006). "An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to [tort] liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment." Id. Thus, the court sees no reason to draw a bright-line distinction between agents in their representative capacities and agents in their individual capacities. Additionally, the rule Mr. Arszyla proposes would be disruptive to other areas of the law. For example, to the extent that employees are understood as agents of their employers, actions within the scope of employment, i.e. in the workplace, could no longer be the basis of individual capacity claims. Accordingly, this court sees no reason why Ms. Prange would lack standing to bring individual claims just because she was allegedly induced to sign the application in her role as coagent.

Finally, Mr. Arszyla argues that, because the application was effectively filed by Ms. Carroll through her coagents, only Ms. Carroll's decedent and estate have standing. See, e.g. Def.'s Mem. at 3, 7-8. However, the court sees no reason why Ms. Carroll's estate alone would have standing, to the exclusion of others who may have been individually harmed by Mr. Arszyla's alleged actions. If an agent is "subject to liability to a third party harmed by the agent's tortious conduct," see Restatement (Third) of Agency § 7.01 (2006), it follows that third parties can also have standing to sue. Ms. Prange plausibly alleges that she was harmed. Thus, the court rejects Mr. Arszyla's

11

arguments and concludes that Ms. Prange has plausibly alleged facts that establish her standing to sue.

B.     Count One: Elder Exploitation

Count One of the Complaint alleges elder exploitation in violation of section 17b-462 of the Connecticut General Statutes.  See Complaint at Count One.  Sections 17b-462 provides a cause of action to a person sixty years or older who was the victim of, inter alia, "exploitation".  Conn. Gen. Stat. §§ 17b-462(a).  Section 17b-450 defines "exploitation" as "the act or process of taking advantage of an elderly person . . . whether for monetary, personal, or other benefit, gain, or profit."  Conn. Gen. Stat. § 17b-450(7).

Ms. Prange's Complaint alleges that she was over sixty at all relevant times and that Mr. Arszyla took advantage of her to his own benefit by asking her to sign the annuity application while omitting crucial pages.  See Complaint at ¶¶ 2, 30.  On its face, the Complaint therefore appears to state a claim for elder exploitation.

Mr. Arszyla argues that, because Ms. Prange signed the annuity application in her capacity as coagent, she was acting on Ms. Carroll's behalf, and cannot bring a claim of elder exploitation in her individual capacity.  See Def.'s Mem. at 5-6.  The court has already addressed Ms. Prange's ability to bring individual capacity claims and rejects this argument.  See supra at 10-11.

Additionally, in the court's view, Ms. Prange's role as coagent is not relevant to the question of whether she was "taken advantage of" within the meaning of the section 17b-450(7).  The court is unable to locate any basis in the common law of agency or Connecticut's statutory power of attorney law as to why acts taken as an agent cannot be the product of "exploitation" under Section 17b-462.

12

Accordingly, the court denies the Motion with respect to Count One.

C.   Count Two: Fraudulent Nondisclosure

Count Two of the Complaint alleges a cause of action of fraudulent nondisclosure. See Complaint, Count Two. Mr. Arszyla argues that, because "all the alleged misdeeds solely relate to disclosures that [Mr.] Arszyla made to [Power of Attorney] Prange," Ms. Prange has not alleged the elements of fraud with respect to her in her individual capacity. See Def.'s Mem. at 7-8.

To state a claim for fraud under Connecticut law, the plaintiff must plausibly allege "(1) that a false representation of fact was made; (2) that the party making the representation knew it to be false; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to her detriment." Asnat Realty, LLC v. United Illuminating Co., 204 Conn. App. 313, 321 (2021). "Fraud by nondisclosure, which expands on the first three of [the] four elements [of fraud], involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there was a duty to speak." Id.

In the court's view, the Complaint plausibly alleges that Mr. Arszyla knowingly induced Ms. Prange to sign the Jefferson annuity application, without disclosing that she was signing away a substantial inheritance. Drawing all inferences in favor of Ms. Prange, this states a claim of fraud. The court also concludes that Ms. Prange has plausibly alleged that the circumstances imposed on Mr. Arszyla a "duty to speak" and make a "full and fair disclosure of known facts". Id. Ms. Prange alleges that she relied on Mr. Arszyla to manage Ms. Carroll's financial affairs, and that he was appointed as coagent with the agreement that he "would take care of all financial matters for [Ms.

13

Carroll]." Complaint, Count One, ¶ 6. In seeking to obtain Ms. Prange's authority as coagent to act on financial matters, the court therefore concludes that Mr. Arszyla had a duty to make a "full and fair disclosure" about the actions where he sought her consent.

Mr. Arszyla argues that the Complaint fails to plead the fourth element, that Ms. Prange did "so act to her detriment," because she was acting in her capacity as coagent under the power of attorney. See Def.'s Mem. at 7. In the court's view, however, even if Ms. Prange was acting on behalf of Ms. Carroll, she was still allegedly induced to take an action that was individually "to her detriment".

Thus the Motion with respect to Count Two is denied.

D.  Count Three: Constructive Fraud

Count Three of the Complaint alleges a claim of constructive fraud. See Complaint, Count Three. Mr. Arszyla argues that judgment should enter on this claim because Ms. Prange has not alleged the required "confidential or special relationship" necessary as a basis for liability. See Def.'s Mem. at 8. The court disagrees.

"The breach of a confidential or special relationship forms the basis for liability under the doctrine of constructive fraud." Mitchell v. Mitchell, 31 Conn. App. 331, 334 (1993). Thus, Ms. Prange must plausibly allege "the existence of a confidential or special relationship." Id. At this stage, Ms. Prange's allegation that Mr. Arszyla was appointed a co-agent with the express agreement that he would "take care of all financial matters for [Ms. Carroll]", see Complaint, Count One, at ¶ 6, plausibly alleges a confidential and special relationship between them. The Motion with respect to Count Three is therefore denied.

### E.     Count Four: Unjust Enrichment

Count Four of the Complaint is a claim for unjust enrichment.  See Complaint at Count Four.  Ms. Prange alleges that Mr. Arszyla unjustly received a benefit from the re-designation of beneficiaries for which he did not pay, and that he has therefore been unjustly enriched.  See id.  In his Motion, Mr. Arszyla argues that Ms. Prange's claim for unjust enrichment should be dismissed because she did not confer a benefit on him.  See Def.'s Mem. at 9-10.

"Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."  Vertex, Inc. v. City of Waterbury, 278 Conn. 557, 573 (2006).  Unjust enrichment "is, consistent with the principles of equity, a broad and flexible remedy."  Id.

In support of his Motion, Mr. Arszyla cites two Connecticut Superior Court cases that have found unjust enrichment claims inapplicable to disputes about the disposition of an estate.  See id.  In both cases, the plaintiffs allege the defendants exerted undue influence on a decedent that wrongfully caused assets to be dispersed to them.  See Markowitz v. Villa, No. CV166060963S, 2017 WL 960769, at *4 (Conn. Super. Ct. Jan. 26, 2017); Moore v. Brower, No. X10UWYCV054010227SCL, 2006 WL 2130385, at *7 (Conn. Super. Ct. June 14, 2006).  Under those circumstances, the courts reasoned that it was the decedent, not the plaintiff, who conferred a benefit on the defendants.  See Markowitz, 2017 WL 960769, at *5 (concluding "the plaintiffs have not alleged, nor can they allege, that they somehow conferred a benefit upon the defendant.").

The court acknowledges that the question of whether Ms. Prange conferred a benefit on Mr. Arszyla presents a convoluted question of agency law.  On the one hand,

15

Ms. Prange's signature on the application pages had the effect of conferring beneficiary status on Mr. Arszyla. On the other hand, Ms. Prange was signing the application pages on behalf of Ms. Carroll.

Although the court views this as a close question, it draws inferences as it must in favor of the plaintiff, and is mindful of the fact that unjust enrichment is a "broad and flexible remedy", see Vertex, Inc. 278 Conn. at 573. Accordingly, the court will not now dismiss on this basis. The Complaint plausibly alleges that the defendant unjustly received a benefit due to Ms. Prange's actions, and the court therefore denies the Motion with respect to Count Four.

### F. Counts Five and Six: Conversion and Statutory Theft

Counts Five and Six of the Complaint allege claims of conversion and statutory theft, respectively. See Complaint at pgs. 7-8. "The tort of conversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights" (internal quotation marks omitted) Deming v. Nationwide Mut. Ins. Co., 279 Conn. 745, 770 (2006). For the purposes of a conversion action, the Connecticut Supreme Court has defined the term "owner" broadly to include "one having an interest other than the full legal and beneficial title", and the definition "varies from an absolute proprietary interest to a mere possessory right." Id.

A person commits statutory theft under Section 52-564 when, "with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or [withholds] such property from an owner. . . ." Id. The torts of conversion and statutory theft are similar but distinguishable in two ways. "First, statutory theft requires an intent to deprive another of his property; second, conversion

16

requires the owner to be harmed by a defendant's conduct." Howard v. MacDonald, 270 Conn. 111, 129 (2004).

Mr. Arszyla argues that judgment should enter on Counts Five and Six because Ms. Prange "merely had a potential expectation of inheritance, which falls drastically short of the ownership element" of conversion and statutory theft. Def.'s Mem. at 10. However, the court has already concluded that under Connecticut law, Ms. Prange's interest in the annuity was "more than a mere expectancy", see supra, at 9 (citing Allen v. Home Nat. Bank, 120 Conn. 306). Likewise, the definition of ownership for the sake of a conversion action does not require "full legal and beneficial title". See Deming 279 Conn. at 770. In the court's view, Ms. Prange's property interest in the annuity is sufficient to state claims of conversion and statutory theft. Additionally, the allegation that Mr. Arszyla did not include certain pages of the application gives rise to a plausible inference of intent, sufficient to satisfy the intent element of statutory theft at this stage. Accordingly, the Motion to Dismiss Counts Five and Six is denied.

G.   Count Seven: Negligent Infliction of Emotional Distress

Count Seven of Ms. Prange's Complaint is a claim for negligent infliction of emotional distress. See Complaint at 8-9. Mr. Arszyla argues that judgment should enter on Count Seven because Mr. Arszyla only owed a duty of care to Ms. Carroll, not to Ms. Prange. Mr. Arszyla is correct that as an agent, his fiduciary duty was to Ms. Carroll. However, the court cannot conclude from that fact alone that he owed no duty at all to Ms. Prange. The Connecticut Supreme Court has said defined the test for the existence of a duty as such:

> "[T]he test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the

defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case."

Ruiz v. Victory Properties, LLC, 315 Conn. 320, 328–29 (2015).  Drawing inferences in the plaintiff's favor, in light of the plaintiff's allegations that she trusted Mr. Arszyla to manage Ms. Carroll's financial affairs, the court concludes that Ms. Prange has alleged an emotional harm that was reasonably foreseeable by Mr .Arszyla.  Thus, for the purposes of this motion, the court concludes that Mr. Arszyla owed to a duty to Ms. Prange, and the Motion to Dismiss is denied with respect to Count Seven.

### H.     Count Eight: Constructive Trust[4]

Count Eight of the Complaint seeks the imposition of a constructive trust.  See Complaint, Count Eight.  "The imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment. . . . Thus, a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Cohen v. Cohen, 182 Conn. 193, 203 (1980) (internal citations and quotations omitted). .  "[T]o impose a constructive trust, the court must find the existence of 'fraud, misrepresentation, imposition, circumvention, artifice or concealment, or abuse of confidential relations." Jarvis v. Lieder, 117 Conn. App. 129, 144 (2009), citing Worobey v. Sibieth, 136 Conn. 352, 356 (1949).

---

[4] The court is aware that "[a] split has arisen among the Superior Court[s] as to whether a constructive trust is an independent cause of action." O'Leary v. Welles, No. CV126026336, 2012 WL 3264060, at *4 (Conn. Super. Ct. July 16, 2012).  The court will not now take up the question: it is not necessary at this stage to determine whether to construe Ms. Prange's claim for a constructive trust is an independent cause of action or merely as a demand for equitable relief.

18

The court, having found that Ms. Prange has plausibly alleged claims for fraudulent nondisclosure, constructive fraud, and unjust enrichment, will not now dismiss her demand for a constructive trust. The Motion to Dismiss with respect to Count Eight is denied.

## V.     CONCLUSION

For the reasons discussed above, Mr. Arszyla's Motion to Dismiss (Doc. No. 94) is denied in its entirety. Given the age of the case, the court sets the deadline for dispositive motions to be filed by January 17, 2025.

**SO ORDERED.**

Dated at New Haven, Connecticut this 11th day of December 2024.

                                           /s/ Janet C. Hall
                                           Janet C. Hall
                                           United States District Judge